Our first case for argument this morning is 20-1237 Seabed Geosolutions v. Magseis. Mr. Lane, please proceed. Thank you, Your Honor. The reissued 45268 patent issue in this appeal addresses devices called seismometers. The only issue in the appeal is the claim construction of the term geophone internally fixed within, which the board construed as a non-gimbaled geophone. Based solely on this construction, the board then distinguished all the prior art of record which describes seismometers with gimbaled geophones. However, the 268 patent specification never mentions anywhere non-gimbaled geophones, nor does it mention anywhere gimbaled geophones. Likewise, neither gimbaled or non-gimbaled geophones are mentioned anywhere in the prosecution history of the 268 patent or in any of the prosecution histories of the 268 patents to parent patents. So the single feature non-gimbaled geophones that the board found distinguished all the prior art of record is never discussed in the patent or the prosecution history. That should, as an initial matter, raise some red flags in our opinion. Moreover, the intrinsic evidence, both the specification and the prosecution history, made clear that the board's construction is erroneous. Many early seismometers had a geophone in one case and all the other components of the seismometer in another case with the two cases connected by electrical wires or cable. But that arrangement, having two cases connected by wires or cable, presented various problems. For example, when a seismometer is on the ocean floor, small currents on the ocean bottom could move the cable and the geophones would detect that movement, causing unwanted noise in the data. Mr. Lane? Yes. This is Judge Chen. We have very limited time, so let me see if we can cut to the chase. Assume for the purposes of this question, this is just a hypothetical, that the extrinsic evidence in this record makes it clear or clear enough that there was a default understanding in this for the meaning of the term fixed, and fixed necessarily excluded gimballed geophones. So if that is the case, then the next question becomes, what is in the prosecution history that makes it clear or clear enough that the claim's usage of the term fixed is somehow something more of a generic usage, and it's not the more technical understanding of excluding a gimballed geophone? Yes, Your Honor. So the term, the language internally fixed was added to the claim language during prosecution. It doesn't appear anywhere in the patent. And it was added to overcome a rejection over two prior art patents to Thornhill and Orbit. And in discussing those rejections, the examiner indisputably used the term fixed inside to describe geophones that are permanently attached and operate while inside a seismometer's in distinction to the way Thornhill's geophone worked. It was ejected from the case and driven into the ground. It might be helpful if you would direct us to the pages in the appendix that correspond to the portion of the prosecution history that you are referring to. Right. So at Appendix 3059, the examiner stated that Orbit teaches that seismic sensors or fixed inside of the housing of the device containing the geophone. In the very next sentence, again on Appendix 3059, the examiner explained he was referring to an enclosed case with a geophone inside that senses seismic waves while keeping the geophone in the protective case instead of ejecting the geophone from the case to implant the geophone in the case. In direct response to those objections, the applicants amended the claim language from geophone disposed within said housing to geophone internally fixed within said housing. Those claim amendments are Appendix 3077 to 3079. So again, the examiner said, used the that he was referring to geophones that stay inside the case of a seismometer. And the applicant then, in direct response to that, amended the claims to mirroring that language, adding internally fixed to the claim. In contrast, neither the applicants or the examiners ever mentioned gimbaled or non-gimbaled geophones, and neither does Thornhill. There's never any mention of gimbaled or non-gimbaled geophones anywhere in the specification or the prosecution history. Mr. Lane, this is Judge Lane. Is the geophone in Thornhill gimbaled? No, Your Honor. Thornhill has what's called a self-orienting mechanism, a very complicated mechanism, but Thornhill never uses the word gimbal. Magsys' arguments on the prosecution history depend entirely on Thornhill's self-orienting mechanism being a gimbal, but it's not. There's simply no evidence in the record that's true. Again, Thornhill never used the word gimbal, as Magsys concedes in its red brief at 14. The applicants and the examiner never mentioned gimbals in discussing Thornhill. Their discussion of Thornhill was at Appendix 3055 to 3062 and Appendix 3083 to 3084. Magsys never submitted any expert declaration explaining that Thornhill's self-orienting mechanism was a gimbal, even though its technical experts submitted a 76-page expert declaration discussing many other technical details. That declaration is the Appendix 2722 to 2797, and Magsys argued below that Thornhill's self-orienting mechanism was a gimbal, but the board didn't make any such findings. Mr. Lane, this is Judge Shen again. We're going to hear from the other side that when you use the term internally fixed to distinguish Thornhill, you use the word fixed in your amendment as a skilled artisan would, and a skilled artisan would understand the word fixed to exclude gimbal geophones. And I think that's why we need to look at your other prosecution history statement that might clarify what did you mean, what did your client mean when it used the word fixed? Right. Exactly, Your Honor. So in the reissue, this is a reissue patent, a 37 CFR- Oh, Mr. Lane, before we get there to your additional prosecution history statement, the other side argues that it's too late for you to raise them now in the first instance on appeal. You may have cited to them, but at the same time, you never really relied on them in the way that you're relying on them now on appeal. So could you get to the waiver question first before you walk us through the prosecution history? Right. So the single claim construction issue in this appeal was one of many, many arguments Magsci's raised below, which you can see a summary of their arguments that appendix 332 to 335, but the board based its entire decision on this single issue at appendix 23 to 24 and appendix 27. On appeal though, for example, an interactive gift versus copy serve, which we've cited in our briefs, it's 256 F3D 1323. The court held that arguments that are based on the specification and evidence and that are in an existing claim construction are not barred by the doctrine of waiver for the sole reason that they were not presented to the trial court. So here you have this myriad of issues, but the board focused on this thin slice of the pie in making its determination. So, of course, we've expanded on that from the arguments below, but all of these prosecution histories were cited below. All of them were in the record, and they were all cited below for the exact same claim construction issue and the exact same position that CBED proffers on appeal. You can see that at appendix 450. Counsel, thank you for that answer. It's very clear. My question about the precedent you cited, it made it sound like almost any evidence would be fair game to rely upon on appeal. Is that your position of our law with regard to claim construction, or is it somehow limited to, say, portions of the intrinsic record or something like that? Right. Yes, Your Honor. It's limited to the intrinsic evidence. So in interactive gift, the quote I just read, and I won't read you back, but it's said based on the specification. And here we're relying on the prosecution history, which is also intrinsic evidence. We don't see any principled reason the prosecution should be treated differently than the specification in this regard. Again, both are intrinsic. And again, here, all the prosecution history CBED cited in its blue brief was, quote unquote, in evidence below and was cited for the exact same arguments that we cited for now. Given our limits in time, I'd like to ask you to move on. Are there additional portions of the prosecution history that you now want to reach that respond to Judge Chen's earlier question? Yes, Your Honor. So we're about to move us to appendix page 710, right? Yes, Your Honor. Exactly. So years before this IPR, when no one was looking, the applicants explained to the patent office for purposes of patentability in their reissue application that the claim language, quote, at least one geophone internally fixed within said internal compartment, conveys with more than reasonable certainty to one of skill in the art a seismic data collection that includes one geophone disposed and electrically connected within the internal compartment. And that, again, is appendix 710. They never said anything about gimbal geophones when they were required to explain where the specification support existed for that claim. Please continue. Well, I've used up my time, Your Honor. I'm happy to answer any more questions, but I'd like to reserve my remaining time for rebuttal. Okay, Mr. Lane. That's fine. Mr. Rodriguez, please proceed. Good morning, Your Honors. It may please the Court. So Steve's argument here is that the construction is inconsistent with the intrinsic record in an attempt to avoid considering the extrinsic record. But this is not a case where the intrinsic record suggests that the claims must covered gimbal geophones. And I do want to clarify one point. Maxweiss' proposed construction below was that the internally fixed geophone that's claimed in the claims is a geophone that does not move, that internally fixed means that it does not move. As a consequence of that, gimbal geophones would be excluded. I just want to clarify that because the advanced construction was not simply that non-gimbal geophones would be excluded. And in support of that, below before the Board, Maxweiss argued that the specification and the written description actually did support its proposed construction. Mr. Rodriguez, this is Judge Shen. What if the claim instead of saying internally fixed within the housing, it said internally mounted within the housing? Would that exclude a gimbal geophone? If it was internally mounted, I don't necessarily believe that would exclude a gimbal geophone. However, I do want to stress that... When I read through the specification, there's only really one location in the patent spec that talks about how the geophone is connected to the housing. And at column six, line 43, it says, it will be further noted that geophone 18 is internally mounted within pod 10 and thus requires no external wiring or connection. So, as far as I can tell, that's the only written description support for understanding the claim phrase geophone internally fixed within the housing. And so, why would it be wrong to understand usage of the claim term fixed in the same way as the spec describes the geophone being mounted within the housing? Yes, Rhonda. May I address that question? Yes. So, I think it's important... Well, first, I would note the words mounted and fixed are different words. And part of the argument below in support of MAXIS's construction was the plain meaning of the term fixed and how it doesn't support movement. Now, at the end of the day, the board found the specification and everything ambiguous, and we'll get to that. But let me stop for a moment and describe, sort of reiterate our argument as to why we did believe the specification does support MAXIS's construction of fixed. The first is the plain meaning of the word fixed. But in addition to the portions that Your Honor cited in the specification, I would point to two things. I'd point to Figure 1 itself, which demonstrates the geophones as 18A, 18B, and 18C. There are no gimbals present in that diagram. The geophones are in three different orthogonal orientations in that diagram, as is explained further below in the last paragraph of Column 6, which we'll get to in a second. And there's another portion in Column 6 that describes how the geophones can be mounted adjacent to the casing wall. You know, we believe that a fair interpretation of mounting a geophone adjacent to the casing wall, that type of mounting is excluding a gimbal as well, that that would be a fixed type of mounting. In addition to that, going forward on Column 6, the last paragraph beginning on Line 56, there's a specific embodiment disclosed. And this is really inconsistent with what CBET has been advancing, suggesting there's no fixed geophone disclosure whatsoever in this specification. In Line 56 of Column 6, it goes on to describe how the geophones can be set in- three or four geophones can be set in either a tetrahedral configuration, or with just three of them, in an XYZ configuration, such that each geophone is picking up a signal on its plane. And that is describing- Mr. Rodriguez, this is Judge Lynn. But in the preceding paragraph- well, first of all, in the paragraph you referenced beginning on Column 6, Line 56, it's talking about another embodiment. But in the preceding paragraph, it talks about geophone 18, not directed to specifically 18A, B, C, and D, as shown in Figure 1. So, to me, it seems that the specification, you know, more broadly describes the geophones that are appropriate. And whether it's the geophones in the alternative embodiment, 18A, B, C, and D, which perhaps are fixed in place and may or may not be gimbled, there is no such implication as I read it with respect to the preceding paragraph and the discussion about geophone 18. Comment? Yes, Your Honor. So, I would note that my reference to the last paragraph is to push back against this disclosure in the specification for a fixed geophone. With regards to Your Honor's comment about the preceding paragraph- Let me- I'm sorry to interrupt, but let me ask you just a follow-up to that. Is there anything in the specification that suggests that the quote-unquote fixed geophones, 18A, B, C, and D, are not each gimbled? I would admit that the paragraph itself, that that wouldn't necessarily make sense to have them gimbled if the goal is to have them on different planes. I'm not sure how one would construct gimbals to accomplish that. Is there testimony to that extent? Because, you know, you may or may not be an expert, but there's a record that we have to  Is there testimony to that? That a skilled artisan would never organize 18A, B, C, and D in different planes and use gimbals? Your Honor, I'm not aware of any specifically. And in part, that's because this written description issue was not before the Board. And so, I want to refocus, if I may, back on the prior paragraph and address Judge Lynn's comments. Your Honor, please do. So, with respect to that paragraph, by using internally fixed in the claim language, as a person of ordinary skill in the art would understand that term, we do believe the claims were being limited to exclude any gimbals that move. And we believe that's consistent with the specification. And we argued below that the specification supported that. Now, at the end of the day, the Board found that the specification and the intrinsic record to be ambiguous. And we don't believe the Board, while we maintain our original arguments, we don't believe the Board erred in finding that ambiguous. And we are focused on this. Mr. Lane. I mean, you're not Mr. Lane, I'm sorry. Mr. Rodriguez. Okay. Can you just go straight to appendix page 710? And this is the statement in the reissue application prosecution history, where the applicant explains how to understand internally fixed and where is the support in the application. And it describes how the geophone is disposed and electrically connected within the internal compartment. And so when I look at that statement, A710, in combination with the other statement I quoted to you from column six, which describes a geophone as internally mounted within the pod 10 and thus requires no external wiring or connection. Why don't those two statements together paint a picture that to whatever extent there might be extrinsic technical meaning of the term fixed, for purposes of this patent and this intrinsic record, that term should be understood in a more generic sense to be referring to something that's mounted or disposed and electrically connected within the housing. Yes, Ron, let me address that. I guess I'd first like to start by addressing the waiver argument. Right. Let's just assume the court knows our waiver law very well on this issue. And let's just get right to the heart of the matter now. Okay. So with regards to the statement here, I would... Give me one second. So a couple of things, Your Honor. I would note that the remarks here that are being cited on 710, they have been couched in terms of examples and that it's only providing examples. I would also note that the first line of this section, Claim 22, where it begins with Claim 22 at Appendix 710, that Claim 22 is a new independent claim. Support for the subject matter of the new Claim 22 is found, for example, in the abstract figures one and two, columns three, lines 66 to column four, line 12, column six, and lines 14 to 58. As I understand this, this is getting to, you know, the written description type of arguments that were not of record below. And this is citing the majority of column six, including up to line 58, which goes into the paragraph, which we characterize as the fixed geophones. Now, we didn't have testimony on that because the written description issue wasn't before the court below. But were we to have litigated this, we would have submitted further testimony and evidence to support the written description portion of this. And so I don't think it's fair... Counsel, this is Judge Moore. I'm not sure why you're so focused on written description. Please focus on Judge Chen's question. Why doesn't this language on 710, which was the applicant's own language describing Claim 22, focusing in particular on the internally mounted language in the spec, not, by the way, encompassing the other embodiment that you tried to point us to with the 18A, B, C, and D, notice that the portion of column six, they point to, does not include that as support for this particular claim. Why aren't these statements, statements that make clear there are two plausible definitions of the word fixed, one in the technology, which might be non-GIMBLED, and one which simply means internally mounted, and that they are using the word to mean what they say in the spec as internally mounted? How do you dispute that that is what JA 710 pretty strongly supports? Well, I guess I would... Thank you, Your Honor, for helping me focus my answer. I would stress that in Appendix 710, it doesn't equate internally fixed with the mounting language. The sentence reads, the application also conveys one with... convey with more than reasonable clarity the one of skill in the art that in at least one embodiment, the seismic data collection unit includes at least one geophone, a clock, a source, et cetera, and then cites the support for that. The sentence doesn't actually recite the internally fixed language and tie it to that portion of the specification. I think that's where I would really push back against this argument. There's no tying of internally fixed. It does cite those portions of the specification, but it doesn't tie that language to internally mounted in any way. And then, again, I would read it as... Go ahead, Judge Long. Sorry. This is Judge Lane. Let me ask you the same question that I asked Judge Lane. In Thornhill, is the geophone 66 gimbal mounted? We argue... We would argue yes. The answer is yes, and we believe that it is. But we would also stress that one can conclude that the amendment was made to exclude geophones that don't move more generally without necessarily having to exclude gimbals necessarily. Well, in operation, the geophone is forced into the ground and is stationary in the ground. And I assume that the geophone itself is not self-orienting. Once it's in the ground, it's in the ground at whatever angle it happens to find itself, correct? That is correct. However, it is before being driven into the ground, it is on the self-orienting mechanism of Thornhill, which as we described in the red brief on pages 10 to 14, that self-orienting mechanism is the fundamental invention of Thornhill that we believe the applicants were distinguishing from by adding internally fixed into the claim language. I would also point to Dr. Boudwin's testimony about gimbling and how some of these other also had self-orienting mechanisms, but those would count as gimbals as well in support of the idea that if necessary, Thornhill does teach a gimbal. Okay. If there are no other questions, I know, Justine, you had asked me to move on from the waiver argument. There's one point on the waiver argument I would like to make without... Nope, but my time is over, so never mind. Okay. Thank you, Mr. Rodriguez. Mr. Lane, you have some rebuttal time. Yes, Your Honor. There's two main points I'd like to address. Mr. Rodriguez disputed my argument that non-gimbal geophones are disclosed in the specification by pointing first to figure one in the patent. However, MAGCYSE's expert, Dr. Dottomo, testified in his deposition that figure one is not a mechanical drawing and it only shows schematically where various components are laid out in the seismometer case. Second, MAGCYSE's counsel pointed to column six, this is appendix 684, column six in the geophones in the X, Y, or Z plane. That argument has never been addressed or raised in this appeal before. It was just raised for the first time in opposing counsel's oral argument. But regardless, that paragraph never mentions gimbaled or non-gimbaled geophones, just like the rest of the patent. The second point I want to address is that we've talked about this plain meaning of below MAGCYSE submitted numerous patents and other publications as the board found at appendix 15 to 16, but it's undisputed that all of those patents and publications were from years after the 268 patents 2003 priority date. And by the way, the board erroneously found that CBET had submitted some of those patents and publications, but they were all submitted by MAGCYSE. So in our view, this shows that six at the time of the invention at the priority date was not understood. It may have had some meaning later in time, but as this court found in Massachusetts Institute of Technology versus Abacus at 462 F3D, 1344, page 1353, a claim's terms is the meaning that the words would have had to a person of ordinary skill and art in question at the time of the invention, i.e., as of the effective filing date of the patent application. So again, these patents and publications, numerous ones raised by MAGCYSE were all from years after the priority date, which in our view doesn't support MAGCYSE's argument. It supports CBET's argument that fixed was not understood at the priority date to mean non-gimbal geophones, and I believe that's all my time. I thank both counsel for their arguments. This case is taken under submission.